UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

O'BRIEN CONSTRUCTION COMPANY,
INC.,

    Plaintiff,

v.

THYSSENKRUPP ELEVATOR
CORPORATION,

    Defendant.

_____/

Case No. 19-cv-10657

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [#2]

### I. INTRODUCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction. Plaintiff requests this Court grant a preliminary injunction to require Defendant to perform in compliance with a contract to turn over control of a completed hotel elevator. For the reasons discussed below, the Court will deny Plaintiff's Motion.

### II. FACTUAL BACKGROUND

Plaintiff, O'Brien Construction Company, Inc. ("OCC") is a construction company that serves as a general contractor. Dkt. No. 2, pg. 8 (Pg. ID 111). On June 8, 2017, Plaintiff entered into a contract with the Metropolitan Hotel Partners

to construct a high-rise hotel in Detroit, Michigan, the Element Hotel. *Id.* The project involved renovating the Metropolitan building located in downtown Detroit into an extended-stay hotel. *Id.* The hotel contains two elevators. *Id.*

On August 11, 2017, OCC entered into a subcontract with Defendant Thyssenkrupp Elevator Corporation ("TKE"). *Id.* at pg. 9 (Pg. ID 112). The subcontract employed TKE to install two elevators in the hotel. *Id.* The contract provided for TKE to provide the materials for and install the two elevators at a quoted price of $763,000.00 over a seventeen-week period, not including change orders. *Id.*; Dkt. No. 2-3, pg. 92 (Pg. ID 217); Dkt. No. 10, pg. 8 (Pg. ID 260). The elevator equipment arrived at the project site on May 11, 2018, requiring Defendant to complete the elevator work before September 6, 2018 under the contract. Dkt. No. 2, pg. 9 (Pg. ID 112).

Defendant had a delayed start on the elevators because other contractors did not complete preparatory work. Dkt. No. 10, pg. 8 (Pg. ID 260). Work on the elevators was also interrupted at various points due to job safety concerns, flooding of the elevator pit, and an improperly built hoist way. Dkt. No. 10-4, pg. 2 (Pg. ID 280). Due to the issues on the project, TKE requested several change orders. Dkt. No. 10, pg. 9 (Pg. ID 261). TKE states that the unpaid balance on the contract, including approved change orders, is $127,950.70. Dkt. No. 10-4, pg. 3 (Pg. ID 281). The balance for change orders that have been issued but not yet invoiced is

$22,450.00. *Id.* The balance for change orders that have not been issued or have been issued under protest is $173,844.70. *Id.* TKE also asserts that the total unpaid balance that OCC owes TKE is $324,245.40. *Id.*

Plaintiff states that elevator two ("E2") is available for guest and staff use, but elevator one ("E1") has not received a final inspection by the city and is not available for use. Dkt. No. 2, pg. 10 (Pg. ID 113). Plaintiff OCC states that TKE has informed OCC that it will not turn over E1 for use by OCC until OCC pays additional sums from the change orders totaling $308,229.65. Dkt. No. 2-8, pg. 2 (Pg. ID 240).

Plaintiff filed its complaint against Defendant on March 3, 2019. Dkt. No. 1. The complaint brings a count of breach of contract, breach of contract implied in fact, express contractual indemnity, requests a declaratory judgment that TKE materially breached the subcontract and OCC is entitled to access the elevators, and requests specific performance and other equitable relief. *Id.* On March 5, 2019, Plaintiff also filed its Motion for a Temporary Restraining Order and Preliminary Injunction, seeking to require Defendant to turn over access of the elevators. Dkt. No. 2. This Court denied Plaintiff's Motion for a Temporary Restraining Order on March 6, 2019. Dkt. No. 5. The Court also ordered Defendant to show cause why a preliminary injunction should not be entered. Dkt. No. 5. Defendant responded to

Plaintiff's Motion for Preliminary Injunction on March 13, 2019. Dkt. No. 10. Plaintiff filed its reply on March 18, 2019. Dkt. No. 11.

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). A preliminary injunction seeks to "maintain the status quo pending a final hearing regarding the parties' rights." *All. for Mentally Ill of Mich. v. Dep't of Cmty. Health*, 588 N.W.2d 133, 137 (Mich. Ct. App. 1998). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540–41 (6th Cir. 2007). The Court must balance four factors in determining whether to grant a request for a preliminary injunction. *Id.* at 542. Those factors are:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

*Id.* In addition, a court should not grant a preliminary injunction where an adequate legal remedy is available. *Pontiac Fire Fighters Union Local 376 v. City of*

*Pontiac*, 753 N.W.2d 595, 600 (Mich. 2008). Applying the factors, the Court does not find that injunctive relief is appropriate at this time.

## IV. DISCUSSION

1. Likelihood of Success on the Merits

First, the Court must determine whether the movant has demonstrated a strong likelihood of success on the merits. This case involves a contract dispute. Plaintiff OCC states that TKE's failure to deliver functional elevators on either the original completion date or the extended completion date constitutes a breach of contract. Dkt. No. 2, pg. 13 (Pg. ID 116). TKE asserts that the parties amended the dates of completion. Dkt. No. 20, pg. 11 (Pg. ID 263). Further, TKE states that the work on the elevators is complete; it has not turned over E1 to OCC due to OCC's nonpayment of the remainder of the contract. *Id.* at pg. 12 (Pg. ID 264). TKE states that payment from OCC is a condition precedent to TKE's obligation to turn over the elevator(s).

Contracts should be interpreted according to their plain and ordinary meaning. *Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 835 N.W.2d 593, 607 (Mich. Ct. App. 2013). "[I]f contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent

of the parties . . . ." *Id.* (quoting *Holmes v. Holmes*, 760 N.W.2d 300, 311 (Mich. Ct. App. 2008)).

The contract between the parties states that the "[s]ubcontractor shall commence and complete the Work in an expeditious manner." Dkt. No. 2-3, pg. 15 (Pg. ID 140). The contract further states that "[n]o extension of time . . . shall be allowed to the Subcontractor . . . unless Contractor consents to the delay in writing." *Id.* at pg. 16 (Pg. ID 141).

TKE asserts that the parties extended the completion date for the elevators several times due to the various problems that TKE encountered on the project. Dkt. No. 10-4, pg. 2 (Pg. ID 280). TKE also states that OCC accepted many of the change requests, but then OCC began to ignore many of TKE's change requests. *Id.* Nonetheless, TKE finished construction of the elevators and is awaiting payment by OCC, which is a condition precedent to giving OCC control of the elevators. Dkt. No. 10, pg. 12 (Pg. ID 264).

OCC replies that the disputed change orders are not a part of the contract. The contract between the parties states that

> No increase in the amount of this Subcontract shall be made by reason of any claim of extra work unless said extra work shall have been performed pursuant to prior written authorization by Contractor as provided below. Prior written consent shall include a fully executed change order or field directive form between Contractor and Subcontractor in accordance with the provisions below.

Dkt. No. 2-3, pg. 16 (Pg. ID 141). According to the contract, any changes to the amount of work were required to be approved by OCC. Defendant states that Plaintiff ignored several of its change order requests. Dkt. No. 10-4, pg. 2 (Pg. ID 280). Defendant also submitted a list of change orders that occurred between the parties. Dkt. No. 10-5. However, it is unclear how many change orders were unapproved by Plaintiff. Plaintiff likewise does not bring forth clear evidence of the change orders that it did and did not approve. For these reasons, this Court is not able to determine the amount of money that Plaintiff may owe Defendant due to changes in the parties' agreement, or determine if Defendant actually breached the parties' contract.

Plaintiff's complaint for breach of contract also requests monetary relief. Dkt. No. 1, pg. 9 (Pg. ID 9). However, a court should not grant a preliminary injunction where an adequate legal remedy is available. *Pontiac Fire Fighters Union Local 376 v. City of Pontiac*, 753 N.W.2d 595, 600 (Mich. 2008).

This Court finds that Plaintiff cannot show that it is likely to succeed on the merits of its claim because this Court requires further information about the change orders between the parties and the amount of payment that is in dispute. Further, Plaintiff's breach of contract claim can be remedied legally with monetary damages, as Plaintiff's complaint requests.

2. Irreparable Harm

To satisfy the second factor, a party must demonstrate that unless the injunction is granted, he or she will suffer "'actual and imminent harm' rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "[H]arm is not irreparable if it is fully compensable by money damages . . . ." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). An injury cannot be fully compensable by money damages if damages are difficult to calculate based upon the nature of the plaintiff's loss. *Id.*

Plaintiff states that it will suffer irreparable harm because the failure for TKE to provide the E1 elevator hinders the hotel's safety, functionality, and reputation. Dkt. No. 2, p. 13 (Pg. ID 116). Plaintiff states that some parts of the hotel are currently only accessible by the stairs because E1 is not in use. *Id.* The hotel's breakfast is served on a floor that currently only has stair access, limiting the use of this floor by the hotel's disabled guests. *Id.* Further, several guests have reviewed the hotel and negatively commented about the lack of two working elevators. Dkt. No. 2-6.

Defendant argues that Plaintiff will not suffer irreparable harm. TKE states that OCC demonstrates that the Element Hotel suffers some harm but not that OCC will suffer harm. Dkt. No. 10, pg. 15 (Pg. ID 267). Further, TKE states that OCC seeks money damages as a result of the alleged breach of contract. *Id.* Therefore, there is

no irreparable harm because any alleged harm can be compensated with monetary damages. *Id.*

Plaintiff replies that it will suffer irreparable harm because the construction of the project is associated with OCC. Dkt. No. 11, pg. 8 (Pg. ID 314). Therefore, when guests make complaints about the hotel, OCC's reputation in the community is damaged. *Id.*; Dkt. No. 11-3. Further, the elevator delays have impacted the willingness of the project owner (i.e. hotel owner) to do business with Plaintiff in the future. Dkt. No. 11-3, pg. 4 (Pg. ID 327).

The Court finds that Plaintiff will be subjected to some harm without the issuance of an injunction. As Plaintiff demonstrates, negative reviews about the functionality of the elevators impacts its reputation. Dkt. No. 11-3. However, Plaintiff does not demonstrate that it will suffer an immense amount of irreparable harm. Plaintiff asserts that the delay with the elevators has impacted the willingness of the owner of the Element Hotel to do business with Plaintiff. *Id.* at pg. 4 (Pg. ID 327). However, according to Plaintiff's own affidavit, OCC and the owner of the Element Hotel have contracted to work together on future projects. *Id.* Further, any negative reviews about the elevators also contained several positive opinions about the hotel. Dkt. No. 2-6. Thus, it is not clear to what extent negative customer reviews actually impact OCC's reputation, and/or if negative reviews simply impact the reputation of the hotel.

This Court finds that while Plaintiff can demonstrate some harm to its reputation without the issuance of a preliminary injunction, Plaintiff has not demonstrated that this harm is irreparable. Negative reviews about the hotel do not necessarily impact OCC, and OCC has contracted with the owner of the hotel to complete future projects.

### 3. Substantial Harm to Others

The third factor requires this Court to consider whether the issuance of the injunction would cause substantial harm to others.

Plaintiffs assert that the issuance of an injunction would not cause substantial harm to Defendant because Plaintiff is ready and able to provide security for payment of all funds that it may owe Defendant. Dkt. No. 2, pg. 14 (Pg. ID 117). Plaintiff asserts that TKE would not be at risk of losing funds because it can maintain a lien against the hotel as security for payment. *Id.* at pg. 15 (Pg. ID 118).

Defendant contends that a preliminary injunction would cause it harm because it would allow a general contractor to dictate how TKE runs its business and it would skew the balance of negotiations between the parties. Dkt. No. 10, pg. 16 (Pg. ID 268). TKE asserts that it and all contractors have a legitimate business interest in requiring payment for materials and services before turning them over to the general contractor or owner. *Id.* Defendant contends that Plaintiff's request for

a preliminary injunction is asking the Court to rewrite the subcontract agreement and eliminate the payment requirement. *Id.*

This Court finds that issuance of a preliminary injunction would cause harm to Defendant by allowing this Court to overlook the contract agreements negotiated by the parties.

4. Public Interest

The final factor to consider is "whether the public interest would be served by granting the . . . preliminary injunction." *Abney*, 443 F.3d at 552–53.

Plaintiff states that the issuance of a preliminary injunction is in the public interest because it will allow for the completion and safe functioning of a large hotel, which benefits the local economy. Dkt. No. 2, pg. 15 (Pg. ID 118). Defendant states that the public interest would not be served by issuance of the injunction because it would impede the enforcement of contractual duties. Dkt. No. 10, pg. 17 (Pg. ID 269).

The Court finds that both parties bring credible arguments that the public interest would be served if the Court were to rule in their respective favors. So this factor is neutral in weighing the factors for injunctive relief.

Upon review of the parties' arguments, this Court finds that a preliminary injunction is not warranted. Plaintiff cannot show a likelihood of success on the

merits or irreparable harm. Balancing these conclusions with the remaining factors that this Court must consider, this Court finds that Defendant must prevail.

## V. Conclusion

For the reasons discussed herein, the Court will deny Plaintiff's Motion.

SO ORDERED.

Dated: March 26, 2019

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 26, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager